**FILED**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

NOV 1 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| ROGER WAGGONER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-2001-PT-2071-E |
| | ) | |
| BOSTROM SEATING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTERED**

NOV 1 - 2001

## MEMORANDUM OPINION

This causes comes to be heard on plaintiff Roger Waggoner's ("Waggoner") Motion to Remand filed on September 13, 2001.

## FACTS

Waggoner is a citizen of the State of Alabama. He is currently forty-six years old and resides in Etowah County, Alabama.

The defendant, Bostrom Seating, Inc. ("Bostrom"), is a corporation incorporated under the laws of the State of Delaware. Bostrom conducts business in the State of Alabama.

Waggoner was employed by Bostrom for approximately twelve years. He was terminated from his employment on December 20, 2000.

Prior to his termination, Waggoner received various employee benefits. Bostrom maintained a qualified written retirement savings 401(k) plan for the benefit of its employees upon termination or retirement after meeting certain age and service requirements. Under the terms of the plan, Bostrom would match half of the first 6% of the employee's annual earning that the employee contributes. Bostrom also had the option to contribute up to 3% of the employee's annual earnings even if the employee did not make any contribution. Waggoner did

11

not make any personal contributions to his 401(k) retirement plan.  Bostrom did elect to make

the optional contribution of 3% of Waggoner's annual earnings into Waggoner's plan.  Besides

the retirement plan, Bostrom also paid the premiums for a $10,000.00 life insurance policy for

Waggoner.  Bostrom also paid the premiums for a $10,000.00 accidental death insurance policy.

Furthermore, Bostrom provided short term disability insurance for its employees in the amount

of $100.00 per week for thirteen weeks.  Finally, Bostrom paid 80% of the premiums for its

employees' health insurance benefits.  At the time of his termination, Bostrom paid $412 per

month in health insurance premiums for Waggoner.

 After his termination, Waggoner filed a civil action against Bostrom in the Circuit Court

of Calhoun County, Alabama, on July 16, 2001.  Waggoner's civil action was based on a claim

arising under the Alabama Age Discrimination in Employment Act ("ADEA"), *Ala. Code* §§ 25-

1-20 to 25-1-40 (1975).  Bostrom filed a Notice of Removal to this court on August 16, 2001.

Waggoner subsequently filed a Motion to Remand on September 13, 2001.

## ARGUMENTS

 Waggoner makes two main arguments in support of his motion to remand.  First, he

contends that this court does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1332

because the amount in controversy does not exceed $75,000.00.[1]  In support of this proposition,

Waggoner states that he specifically limited his prayer for relief to preclude removal of this

action by inserting the following language in the complaint:  "Wherefore, Plaintiff demands

judgment against the Defendant for compensatory and punitive damages in an amount not to

exceed $70,000.00, plus interest and costs."  Waggoner notes that the burden is on Bostrom to

---

[1]  Waggoner concedes that there is diversity of citizenship between the parties to this action.

2

demonstrate that there is federal jurisdiction. Relying on the Eleventh Circuit's opinion in *Burns v. Windsor Insurance Company*, 31 F.3d 1092 (1994), Waggoner asserts that removal statutes are construed narrowly and uncertainties are resolved in favor of remand. Additionally, Waggoner argues that *Burns* stands for the proposition that where a plaintiff has specifically claimed less than the jurisdictional amount in state court, a defendant, to establish removal jurisdiction, must prove to a "legal certainty" that the plaintiff would not recover less than $75,000.00 if he prevailed. *Id.* at 1095. Waggoner concludes by asserting that Bostrom cannot prove to a "legal certainty" that he would not recover less than $75,000.00 if he prevailed.

Waggoner's second argument is that there is no jurisdiction in this court pursuant to 28 U.S.C. § 1331 because his age discrimination claim is based entirely on the ADEA. *See Ala. Code* 25-1-20 to 25-1-40. Waggoner argues that ERISA's provisions are not implicated because he is not alleging a bad faith refusal to pay benefits, breach of contract, fraud, or any other causes of action that would require this court to interpret an ERISA benefit plan. Waggoner contends that his complaint is not based upon any employer misconduct relating to an ERISA benefit plan, but, rather, is for the wrongful termination of his employment because of his age.

Assuming arguendo that his state court cause of action might be preempted by ERISA, Waggoner still argues that remand is appropriate because preemption of a state court cause of action by federal law is merely a defense to a state court cause of action; not a basis for federal jurisdiction absent diversity jurisdiction. In support of this proposition, Waggoner relies on the Supreme Court's opinion in *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1 (1983). Specifically, Waggoner argues that the Supreme Court's "well pleaded complaint" rule dictates that federal courts do not have subject matter jurisdiction over state law causes of action in which a federal defense is

3

raised:

> Thus, a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that a federal law deprives the defendant of a defense he may raise, . . . or that a federal defense the defendant may raise is not sufficient to defeat the claim. . . .

*Franchise Tax Bd.*, 463 U.S. at 10 (internal citations omitted).  Relying on this authority, Waggoner claims that removal of his state law cause of action, based on the defense of ERISA preemption, is inappropriate.

In response, Bostrom argues that this court does have jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 due to the fact that Waggoner could seek to amend his prayer for relief in his complaint at any time.  Bostrom notes that the Alabama ADEA mandates the statutory remedies of back wages, front pay, other compensatory damages, liquidated or punitive damages, attorney's fees and costs.  *See Ala. Code* § 29-12-29 (1975) (stating that the Alabama ADEA authorizes the same remedies as the federal ADEA).  Bostrom argues that the alleged amount of $70,000.00 is not an appropriate indicator of the amount in controversy because the amount of these elements of damage cannot be determined as of the date of the filing of the complaint.  Additionally, Bostrom contends that Waggoner has no control over the amount of damages that could be awarded by a jury or the amount of attorney's fees that could be awarded by the trial court.  Consequently, Bostrom alleges that it is potentially exposed to verdict significantly greater than the $75,000.00 jurisdictional amount.[2]

Bostrom also contends that this court has jurisdiction over this action pursuant to 28

---

[2]  Bostrom also notes that Waggoner has not stated that he is willing to waive any and all statutory monetary benefits which could be potentially awarded in excess of $70,000.00.

4

U.S.C. §§ 1331, 1367.[3]  Although the face of the complaint demonstrates that Waggoner brought

his cause of action pursuant to the ADEA, Bostrom argues that the substance of the complaint is

governed by ERISA because Waggoner seeks employee benefits from Bostrom as part of the

prayer for relief.  *See* 29 U.S.C. § 1132.  In support of this assertion, Bostrom specifically cites

the court to paragraphs 5 and 6 of the complaint:

> Plaintiff alleges that he was discriminated against by the Defendant in his
> discharge because of his age, the expense of Plaintiff's wages and accrual of
> benefits to Defendant, and because of his employment seniority with Defendant.

> Because of Defendant's unlawful discharge of Plaintiff, Plaintiff has suffered lost
> wages, lost and/or forfeited benefits, and mental anguish.

Bostrom contends that the "lost and/or forfeited benefits" claim is a substantive allegation and,

consequently, Waggoner's Alabama ADEA is preempted by ERISA because he alleges that

Bostrom terminated his employment to avoid paying employee benefits.

Bostrom argues that the Alabama ADEA claim is preempted by ERISA and that this

court has jurisdiction because the provisions of ERISA so completely preempts the ADEA state

law claim that the complaint raises a federal question.  Relying on *Metropolitan Life Insurance*

*Company v. Taylor*, 481 U.S. 58 (1987), Bostrom argues that federal question jurisdiction is

present where federal law so completely preempts state law claims that any civil complaint

raising a claim that is within the scope of the federal statute is necessarily federal in nature.  *Id.*

at 63-64.  *See Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193 (11th Cir. 1991) (holding that

state law claim was, as a result of ERISA "super preemption," converted into federal claim and

was thus properly removed).  Bostrom asserts that ERISA provides the exclusive remedy for

---

[3]  Bostrom contends that this court has jurisdiction pursuant to 28 U.S.C. § 1331 because the Alabama
ADEA claim is preempted by ERISA.  Additionally, Bostrom argues that this court can exercise supplemental
jurisdiction over the state ADEA claim pursuant to 28 U.S.C. § 1367.

rights arising under any employer maintained benefit plan. *See* 29 U.S.C. § 1002(2).

Furthermore, Bostrom contends that a state law claim relates to an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines*, 463 U.S. 85, 96-97 (1983). *See Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (holding that "[a] party's state law claim 'relates to' an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay benefits"). Additionally, Bostrom asserts that ERISA preemption applies where a plaintiff alleges his employer terminated his employment to avoid paying benefits: "[A] claim that the employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund– 'relates to' an ERISA-covered plan . . . and is therefore pre-empted." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990).

According to these authorities, Bostrom contends, ERISA provides the exclusive remedy because Waggoner seeks benefits under an employer maintained benefit plan. Bostrom notes that it provides insurance and retirement benefit to its employees that fall within the ambit of ERISA. *See* 29 U.S.C. § 1002(2). It asserts that it is an employer under ERISA as defined by 29 U.S.C. § 1002(5). Furthermore, it provides that it is engaged in an industry or activity affecting interstate commerce as defined by 29 U.S.C. § 1002(12). Finally, Bostrom states that Waggoner was a qualified employee that participated in these plans. Since Bostrom has maintained these qualified plans and Waggoner has made a claim for "lost and/or forfeited benefits," Bostrom argues that ERISA preempts the Alabama ADEA claim.

Finally, Bostrom contends that ERISA preemption applies because this court would be required to consult the ERISA-covered benefit plan to calculate damages. Relying on *Robinson*

6

*v. Fikes of Alabama, Inc.*, 804 F. Supp. 277 (M.D. Ala. 1992), Bostrom argues that ERISA

preempts state law claims which "specifically refer to and would affect an ERISA plan; would

contravene the structure and purpose of ERISA; would require construction of the benefit plan;

or would mandate an interpretation of the statutory duties of one of the parties to the plan." *Id.*

at 282. Bostrom notes that the *Robinson* court found the state law claims preempted "because in

order to calculate what, if any, damages [Plaintiff] incurred . . . the court would first be required

to determine whether [Plaintiff's] injury would have been covered under the terms of the

[Defendant's] plan." *Id.* at 283. Bostrom argues that this court will have to consult the ERISA-

covered benefit plan to determine the appropriate remedy and, therefore, this court has federal

question jurisdiction because ERISA preempts the Alabama ADEA claim.

## MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Burns v. Windsor Ins. Co.*, 31 F.3d

1092, 1095 (1994). Therefore, federal courts only have power to hear cases that they have been

authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen v.*

*Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The limited nature of federal

court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where

federal jurisdiction is not absolutely clear. *Burns*, 31 F.3d at 1095. The removal statute is to be

construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v.*

*Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed from state to federal court only if the case could have been

brought originally in federal court. *See* 28 U.S.C. § 1441(a). Thus, a state court action may be

removed to federal court based upon diversity or federal question jurisdiction. *Id.* at § 1441(a),

(b). A defendant's right to remove and a plaintiff's right to choose the forum are not on equal

7

footing. *Burns*, 31 F.3d at 1095. The burden of establishing federal jurisdiction is placed on the

removing party with all doubts resolved in favor of remand. *See Diaz v. Sheppard*, 85 F.3d

1502, 1505 (11th Cir. 1996). Consequently, if the plaintiff and defendant "clash about

jurisdiction, uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095.

## CONCLUSION OF THE COURT

The court concludes that this action is due to be remanded to the Circuit Court of

Calhoun County, Alabama. The court cannot determine with legal certainty that the amount in

controversy exceeds $75,000.00. Further, the only benefits alluded to by the plaintiff, vacation

and sick pay, are not considered ERISA benefits. *See* 29 C.F.R. § 2510.3-1(b)(2), (b)(3)(i)

(2001).[4] *See also Shea v. Wells Fargo Armored Serv. Corp.*, 810 F.2d 372 (2d Cir. 1987)

(holding that sick leave and vacation wages fell within payroll practices exclusion from

employee welfare benefit plan); *United Automobile, Aerospace and Agricultural Implement*

*Workers of America v. R.E. Dietz Co.*, 996 F.2d 592 (2d Cir. 1993) (holding that employer's

policies and practices regarding vacation pay was not "employee welfare benefit plan" within

meaning of ERISA); *and Alaska Airlines, Inc. v. Oregon Bureau of Labor*, 122 F.3d 812 (9th

---

[4] This federal regulation provides that employer "payroll practices" covering vacation and sick pay are not
included in the ERISA terms "employee welfare benefit plan" and "welfare plan." *See* 29 C.F.R. § 2510.3-1(b)
(2001). In particular, the regulation states that the terms "employee welfare benefit plan" and "welfare plan" do not
include –

> (2) Payment of an employee's normal compensation, out of the employer's general assets, on
> account of periods of time during which the employee is *physically or mentally unable to perform*
> his or her duties, or is otherwise absent for *medical reasons* (such as pregnancy, a physical
> examination or psychiatric treatment); and

. . . .

> (i) Payment of compensation while an employee is on *vacation* or absent on a holiday, including
> payment of premiums to induce employees to take vacations at a time favorable to the employer
> for business reasons . . . .

*Id.* at § 2510.3-1(b)(2), (b)(3)(i) (emphasis provided).

8

Cir. 1997) (holding that employer's payment of sick leave to its employees constituted exempt payroll practice not regulated by ERISA).

This ____ day of October 2001.

**Robert B. Propst**
**Senior United States District Court Judge**

Also see Wright v. General Motors decided by the 6th Cir. on 8-28-01

9